Next case on for argument is Montauk, USA v. 148 South Emerson Associates Mr. Bowie. Bowie or Bowe? You had it right the first time, Your Honor, Bowie, which is rare. If it pleases the Court, my name is Michael Bowie from Kazowitz-Benson-Torres on behalf of the appellant, Montauk, USA. Subject to the Court's issues or questions, I'd like to use my allotted time to focus in on two issues. The first is, or two arguments, the first is that the Court erred in holding that the appellee, Meyer, had standing in this case because at that time, and as we sit here today, or as his counsel is here today, Meyer is not a party to this action. And second, that the Court erred in holding that two Georgia cases, one federal, one state, were a sufficient basis to dismiss our action for infringement on the Lanham Act under the first file rule and award costs under Rule 41. Tell me why Meyer couldn't bring this action on behalf of Associates. He could not for the following reasons, Your Honor. There is the most basic constitutional concept of standing and federal procedure that the only person who can get relief from a court is someone who is a party to the proceeding. This case was filed by Montauk. This is, you know, we're beyond that. I mean, this is a question of whether or not he could sue derivatively on behalf of Associates. And that's where I'm stuck on that. He can't sue derivatively for the following reasons, Your Honor. First of all, under the Federal Rule of Civil Procedure, Rule 23 covers derivative actions. It only provides for the filing of a complaint. It does not provide for defensive derivative actions. Therefore, he would have to intervene to become a party, which he did not do. But if he had, Your Honor, if he had, and we didn't get to litigate this issue. Could he have brought an action to, in effect, preclude you from doing what you wanted to do as a plaintiff, derivatively? Could he have brought an action? No, Your Honor, he couldn't do any of these things as a derivative claim for the following reasons. A derivative claim has certain requirements. And because he didn't move to intervene, we didn't litigate these issues. The requirements of a derivative claim, it doesn't mean that if the receiver here decides he doesn't want to do something, they automatically get to jump in front. We all know that. The question then becomes, is the receiver's actions consistent with the business judgment rule? If it is, you don't get to sue derivatively, either as a plaintiff or assuming you can. Can't the receiver, as a matter of business judgment, consent to have Meyer represent the company? Exactly, Your Honor. He cannot, because as a matter of law, he is not a party, unless he intervenes. He cannot, as a derivative matter, say, okay, you can swap with me. Any more judge than if a husband and a wife, and that's really what we're dealing with here, is a business divorce. Would there have been a problem here if the receiver had said, I'll bring the lawsuit, you tell me which lawyer to hire, and you pay the fees, and they'd reach an agreement? There would not have been, Judge. That would not have been a problem. There would not have been a problem. How is this materially different? It's materially different, Judge, because the actual party in interest is not before this court and wasn't arguing before the court below. Just like, Your Honor, if a husband and a wife, and this is really a divorce. The receiver was a party in interest, and the receiver's interests were being protected by this lawsuit. The receiver represents the company. The company can only be represented by its own lawyers. The receiver cannot say, hey, Joe Blow, you as an individual can represent me. Mr. Katterson here is not here on behalf of the company. He's here on behalf of Mr. Meyer, who is not a lawyer and who is effectively coming to this court as a stranger to the proceeding and saying, even though I haven't done anything to join the proceeding as a party, like in a plaintiff's action, the derivative plaintiff is a party. They are at the top of the caption. It's John Doe, derivatively, on behalf of this corporation. This is a bizarre procedural posture that they and the receiver decided to pursue. Your alternative, Your Honor, might have worked. But to come in and say, yes, Your Honor. Is that the only alternative? Are there any other alternatives that would have worked along the lines of what? Look, I know, Judge, I think the only one I've come up with is I suppose that they could have said, the alternatives are, if the receiver had said, I'm not going to defend the case because I don't want to, or I'm not going to defend . . . I have enough money here for me to defend the case. You want to pay for it. I think it should be defended. You want to pay for it. You advance me the money and I'll take care of it.  And I'll go along with that. Your Honor, as long as he is the party in interest, we are entitled to have the party in interest, both under constitutional law and under the Federal Rules of Procedure. The party in interest has to be the actual party. And there has to be a party. Mr. Katterson still does not represent a party to this action. And again, the actual facts that occurred here, Your Honor, are as follows. The receiver said, I don't want to do it. You do it. And as I was explaining, Your Honor, if a husband and wife . . . But he didn't say, I don't want to do it. And they weren't having a fight. He was saying, if you can't do it or don't want to do it, then I will do it. Correct, Judge. But I can't . . . They were in total agreement that the suit should proceed. Under their version of the facts, which I'll assume at this posture, Judge. But I can't, if I'm sued, I cannot say to my pal, you go to court and represent me. I can't. I don't have standing to do that. Or he doesn't have standing to do that. He doesn't. He doesn't have constitutional standing. He doesn't have standing under the Federal Rules of Procedure. He doesn't. And that is exactly what happened here. With respect to the dismissal on the first filed and the award of cost on Rule 41. The court erred because both Georgia cases . . . Hasn't the case been transferred up here now? It has, Your Honor. Why doesn't that meet the first file problem? It doesn't, Your Honor. Well, it could have. Outside of the record, Your Honor . . . The first case was . . . the second case was dismissed up here. And now that judge has the first case. We could reinstate them, let them consolidate. Your Honor, as a practical matter, Your Honor, we have to be able to bring our Lanham Act case somewhere. Yeah. It has now been transferred . . . The action is in Georgia, which didn't involve that claim. And that's why the dismissal here was an error, are now here. We've made a motion to amend. We asked . . . Amend or consolidate? To amend in that . . . We have a complaint in that action. It doesn't include that claim. Because we couldn't have brought the Lanham Act claim in Georgia, Judge. Oh, I see. All right. But now the Georgia case is here. Correct, Judge. So we've moved to amend to join the Lanham Act. They would not stipulate to allow us to amend. And so, we're in limbo here. And so, the reason this claim should be restored . . . Do you have any objection to having the Lanham Act claim part of the legal proceedings in the Eastern District? Whether it's part of the original case or part of the second case? Correct. You're indifferent on that. I am indifferent. Either reinstate the second case and have a consolidation . . . Correct. Or just add a claim to the first one. Correct. But since I don't have an order allowing me to amend . . . If I could just finish, Your Honor, in the moments I have. The cases that were brought in Georgia were in Georgia because of a license agreement. If you look at page 41 of the record, which required cases under the license agreement to be brought in Georgia. The Lanham Act case was brought here for events that happened after the license was terminated. So, entirely different events. For infringement that happened . . . You couldn't bring in a Lanham Act claim while a license agreement was in place. When the license agreement was terminated, things went forward. There was infringement. And the infringement claim was brought in the Eastern District because there was no forum selection clause to be in Georgia. We had to bring it here where we had jurisdiction. So, is anybody contesting the jurisdiction of the Eastern District Court to manage the lawsuit that was transferred? No, Your Honor. You're not? Absolutely not. Do you know where your adversary is making the argument that you made a minute ago about the license agreement? No, I don't. I think, Judge, we terminated the license agreement. They secured an order saying the license agreement was void ab initio. So, as we are sitting here today, the license agreement is . . . Not relevant. Not relevant. Good. Thank you. Thank you. And you've reserved one minute, Mr. Bowie. Mr. Katterson. Good morning, Judge. James M. Katterson for Arnold and Porter K. Scholar on behalf of 148 South Emerson Associates. Let me start with the principle that my adversary has cited a whole raft of cases in the brief that, while in a snapshot, are probably an accurate assessment of the law, as is recited in the cases, they have nothing to do with this case. We don't have to show in any way, shape, or form that there was negligence, fraud, or bad faith before we could derivatively represent 148 South Emerson Associates. The only reason for that rule, as this Court is aware, is when a board of directors of a corporation either declines to bring suit or won't continue a suit, for somebody to intervene derivatively, they need to show that fraud, negligence, or bad faith to overcome the business judgment rule. That's the test in New York, and it's the test in this circuit. Here, though, the receiver has exercised the business judgment rule to say, and it's set out at length in the opinion of the Court below, it's the business judgment of the receiver that the grotesque cost of all of these litigations can't be borne by the ongoing business of the sloppy tuna. That if Meyer will step in and defend the case and bear the cost, the receiver will consent to that happening. The receiver has no issue with that. When the receiver submitted that declaration to the Court on surreply, because Mr. Dasher, the sole owner of Montauk, USA, represented that the receiver defaulted, that the receiver didn't want to defend, that the receiver thought it was a waste of money. The receiver submitted a declaration explaining what I just represented to the Court, Judge Feuerstein, in the exercise of her inherent powers to manage the case, and equity jurisdiction said, all right, I understand that the business can't afford the representation, that Meyer is ready, willing, and able to defend associates in this form, and the Court let Meyer appear derivatively on behalf of associates. There is not a single case cited in my adversary's brief that would prohibit that in any way, shape, or form. The one case they rely on is Crane AG. It's a 2011 First Department case. It's an opinion by Justice McGuire. In that case, they said, the Court said, that there could be no derivative action in an LLC because the operating agreements of that LLC said there must be unanimity on all the shareholders before any affirmative actions could be taken on behalf of the LLC. So it was barred by the agreement.  The exact opposite of the agreement in this case, the exact opposite, the agreement in this case, the operating agreement for 148 South Emerson Associates, like 148 South Emerson Partners, empowers each of the members to act on behalf of the LLCs. It is the exact opposite of the case my adversary relies on. My adversary also says that there is an inherent conflict of interest in having Meyer represent associates derivatively because Meyer, as a member of 148 South Emerson Partners, the company that owned the real estate, moved to evict associates in a related proceeding. Judge Feuerstein remarked on this issue, I suppose inadvertently, when she was going through the tortured history of the litigation here, when she noted that Dosher has done exactly the same thing. He sued derivatively on behalf of associates and partners. He sued opposing counsel purportedly for a slanderous statement made at a conference in Chambers. Of course, the penalty for that was Dosher and his lawyers, not Mr. Bowie, of course, were both sanctioned $50,000 each for that case. But Dosher has done the exact same thing, and it reflects that fundamental principle of law that you can pursue a derivative claim simultaneously with a direct claim against the corporation. It's black letter law in the first department. State law controls that issue, I believe, but it's also black letter law in this circuit that you can pursue both a derivative claim and a direct claim against the corporation. It may be counterintuitive, but that's the law in this department. So there seems to be out there some notion, and I would appreciate learning your views on this, that in order to bring a derivative claim or, in this odd circumstance, to defend derivatively, there is a requirement under New York law that there is some misfeasance or malfeasance on behalf of the entity, the directors or peoples, and therefore the shareholder needs to step in and take care of business. So disabuse me of that. Whether I disabuse you or not is a different issue, Judge. Okay. That is directly refuted by the posture of this case. I agree that that's the standard. That's when the company and the directors of the company are at loggerheads with the shareholder. And refuse. And can't get along, and they refuse to pursue the thing, claiming it's their business judgment to decline the representation, decline the lawsuit. That's not what we have here. No, Judge. It's actually the polar opposite of what we have here. The history of this case is ten lawsuits across three jurisdictions in three different courts, state court in Georgia, federal court in Georgia, and state court in New York. It's been to the appellate division many times on emergency applications. Mr. Bowie's client is a serial forum shopper. There's no two ways around it. And the record that Judge Feuerstein laid out at the beginning of her opinion demonstrates that Justice Gargiulo entered an order, it's in the record, that DASHA was not to interfere with the operations of the receiver in any way, shape, or form. Not weeks went by before he promptly filed the case in Georgia in state court in Fulton County to do exactly that. When he filed the case in state court, he had the unfortunate experience of running into Judge Goger. The colloquy is cited in the record. Judge Goger said, why are you here? Mr. Morolla, DASHA's lawyer in Georgia, said, well, they're infringing on our marks. We've sent a cease and desist letter to them under the license agreement, which is now void, by the way, found void by Justice Gargiulo. And we need a TRO at the beginning of the season in 2016 as the receiver was about to open the sloppy tuna restaurant, bar, restaurant, kid bar. Judge Goger said, no, you've been ordered not to interfere. Why don't you go back and ask Judge Gargiulo whether or not this is interference with the receiver? At that point- Who entered the non-interference order? I thought it was Judge Feuerstein. No, it was Justice Gargiulo. He entered the non-interference order on March- All right, all right, thank you. It's in the record. He enters it. Ever since he entered it, Mr. Bowie's client has done absolutely everything possible to interfere with the receiver. So at the beginning of the season, he files the Georgia state court case. The TRO is denied. He then runs up to the Eastern District of New York, files the action. Meyer makes the demand on the receiver to defend the receiver. I won't repeat all that dialogue about the receiver saying no. He then moves on the Friday of July 4th weekend, just like the beginning of the season for the sloppy tuna, he moves on the busiest weekend of the summer. Mr. Bowie moves for an order to show cause in front of Judge Feuerstein on the exact same relief he sought in Georgia to shut down the sloppy tuna by preventing them from using on Friday of July 4th weekend, on no notice to anybody except the receiver, less than 24 hours notice. No notice to us. He's been litigating against us for years. No notice. To shut down the sloppy tuna by saying it's an infringement of the marks. This is a wholly created set of facts. So when we go back to the first filed rule, there are no new facts here. There's no new claims. The whole claim is who has the right to the marks. That's the only claim. The Lanham Act claim, the infringement claim, it all devolves to who has the right to the marks. There are no new claims here other than those ginned up by Mr. Morolla in Georgia when he sent that phony demand letter. So what is the problem with just the judge, with the Eastern District now taking both cases? And the District Court has the Georgia case now, right? Yes, Judge. And that raises the same issues that we've been talking about. Everything is consolidated there. And it seems to be that everything could be disposed of there. Why would we want to just send everything back to the Eastern District for consolidation purposes and dispensation of one sort or another? I would suggest, Judge, that I rarely get to use a holding so alliterative that I can't pass it up. It's in Curtis v. Citibank. It's a decision from this court in 2000. The court said plaintiffs have no right to maintain two actions of the same subject in the same court against the same defendant at the same time. Well, if they have a different claim, then what about that? I mean they're claiming a breach and a Lanham Act infringement. Judge, if you really thought he had a new claim, his remedy was clear. He could have moved at the time to amend the Northern District of Georgia case to include his Lanham Act claim. If he really thought he had a claim. Instead, he marched to Fulton County to file yet another lawsuit. He could have, after he lost in Fulton County, he could have asked Judge May in the Northern District of Georgia. I see my light's on. If I could just finish, Judge. He could have asked Judge May to lift the stay. By the way, he appealed that stay to the Eleventh Circuit and lost that. He could have asked Judge May to lift the stay so he could amend his Northern District claim. But instead, he filed a third lawsuit. This man is a serial form shopper, Judge. So under all the circumstances, I mean it is rare that we sort of engage in this kind of close parsing of the ping pong that has been going on. Back to or spinning off of Judge Walker's questions. Why doesn't it make sense to remand this to the district court with some instructions and guidance from this court? And have Judge Fierstein sort all this out and allow you to make the arguments there that you're making to us? I would suggest, Judge, that that would be rewarding him for filing an endless series of cases about the exact same thing. That's the first thing. But there's no reason to remand it because the Northern District case is in the Eastern District now. There's no reason to remand it. And Dosher has moved to amend his now Eastern District case. He's already moved to amend. Okay. Thank you, Judge. Thank you. That motion is sub judice-y, is it? It's not even fully briefed, Judge. Not even fully briefed. Okay. Thanks. Mr. Bowie. Your Honor, very briefly, the concept that these are not different claims is absurd. Again, the claims that were filed in Georgia were filed in Georgia because they were filed under a license agreement to enforce that license agreement. When that license agreement was terminated by us and they got it terminated otherwise by the court, it ended. When he says we have no new claim, we have had over a year where that trademark has been used. It's a registered trademark. It has been used. The license agreement is irrelevant because it doesn't exist anymore. So what claim would we have that's new? The claim we have today for infringing that mark under the Lanham Act. We have a duly issued trademark, and obviously today, tomorrow, the next day, and as long as they use that trademark without authorization, we have that claim. Obviously, it is a new claim. With respect to the derivative point, Your Honor, again, I agree with counsel and Your Honor. The fact is you asked me why he couldn't bring a derivative claim, Your Honor, and we talked about that. The fact is this is not a derivative claim. That is a canard. This is a claim where essentially the receiver has said you go and do my bidding, and I'll just ask as I close, Your Honors, to have you consider this. If you were trying a case and you required parties to be at the table for the trial, and in fact the party didn't show up, someone else showed up, and they brought their own lawyer, and they said, well, we're going to be responsible for this case. We all know that would not be proper because that person's not a party. That person cannot make decisions, nor can Mr. Meyer or Katterson. In that case, they can't make any decisions because they're not the party. The receiver is, and he's not there, and neither is his lawyer. The party to that case isn't there, and the party to that case is not in this courtroom before you, and that is not constitutionally proper or procedurally proper. Thank you very much, Your Honors. Thank you, Mr. Bowie. Thank you, Mr. Katterson. Helpful argument. We're going to reserve decision, but try to get you an answer soon.